UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

RODNEY E. ROBERTS,          )
                            )
        Plaintiff,          )
                            )
    v.                      )      No. 2:05 CV 80 JCH
                            )                      DDN
MICHAEL J. ASTRUE,[1]       )
Commissioner of Social Security, )
                            )
        Defendant.          )

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Rodney E. Roberts for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401 et seq. The action was referred to the undersigned United States Magistrate Judge for a recommended disposition under 28 U.S.C. § 636(b).

**Procedural Background**

On July 7, 2003, plaintiff applied for disability insurance benefits under the Act. He alleged he became disabled on December 1, 2001, at the age of 44, because of epilepsy, esophagitis, cluster headaches, anxiety, depression, fatigue, and nausea. (Tr. 16, 61-62, 75.)

Following an evidentiary hearing on July 13, 2004, the administrative law judge (ALJ) denied benefits. (Tr. 16-26.) Because the Appeals Council denied review of the ALJ's decision (Tr. 7-9), it became the final decision of the Commissioner for review in this action.

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as defendant in this action. 42 U.S.C. § 405(g).

**General Legal Principles**

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it merely because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits under the Act, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or that has lasted or could be expected to last for at least 12 months. See 42 U.S.C. § 423(a)(1)(D), (d)(1)(A). The Commissioner's regulations prescribe a five-step procedure for deciding a disability claim. See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, the indicated decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

At Step Four, the Commissioner must decide whether the claimant can perform his past relevant work. Id. § 404.1520(a)(4)(iv). Here, the ALJ determined that plaintiff was unable to perform his past relevant work. (Tr. 24.) Therefore, as the ALJ acknowledged ( id.), at Step Five of the analysis the burden shifted to the Commissioner to show that plaintiff can perform other relevant work in the national economy. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). However, at Step Five, the ALJ found that plaintiff had the residual functional capacity (RFC)

to perform a significant range of light work.[2] (Tr. 24.) He thereupon concluded that plaintiff was not disabled. (Id.)

**The ALJ's Decision**

In his decision denying benefits, the ALJ found that plaintiff could not perform his past relevant work, but could perform work found in significant numbers in the regional economy. (Tr. 17.)

The ALJ found that plaintiff had the medically determinable physical impairments of partial seizure disorder, migraine headaches, esophagitis,[3] depression, and a drug overdose in June 2003. (Tr. 18, 25.) The ALJ found that plaintiff's impairments were not severe individually, but in combination were severe. The ALJ found that other alleged impairments (peptic ulcer disease, degenerative joint disease, numbness in left leg, chest pain, blurry vision, and bowel incontinence) were either not significant or have not persisted, or were not expected to persist, for 12 consecutive months. (Tr. 18.)

The ALJ noted that plaintiff's seizures were infrequent. Plaintiff reported almost constant dizziness, confusion, and fatigue, particularly after his drug overdose in June 2003. A mental health specialist thought those symptoms were psychological in nature. The ALJ noted that

---

[2]Light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3]Esophagitis is an inflammation of the lining of the esophagus, causing discomfort and sometimes ulcers and scarring of the esophagus. Webmd.com/content/article/90/100654.htm. (Last visited February 26, 2007.)

-3-

plaintiff's PET scan was abnormal, and the ALJ noted that he did not have the report from Dr. Fesslar, who did a surgical evaluation on plaintiff. (Tr. 19-20.)

The ALJ noted that plaintiff is compliant with medications, and suffers only infrequent seizures. The ALJ noted inconsistencies with the exact nature of plaintiff's headaches. He noted plaintiff's esophagitis is controlled by Prilosec.[4] (Tr. 20.)

The ALJ noted that physicians had advised plaintiff not to drive and to avoid hazards. He also noted that David L. McLaren, M.D., plaintiff's treating physician, thought plaintiff could not work and that there was no discernable treatment, but later admitted plaintiff had no seizures while on Tegretol.[5] He thought the opinions of Dr. McLaren were internally inconsistent and inconsistent with other physicians. (Tr. 20-21.)

The ALJ gave substantial weight to the opinions of Dr. Silver, a former treating neurologist and current state agent medical consultant. He accepted Dr. Silver's opinions that plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently, that plaintiff could stand or walk for six out of eight hours, and sit for six hours, that he could never climb ladders, ropes, or scaffolds, and that he must avoid all unprotected heights, dangerous moving machinery, and excessive noise. (Tr. 20-21.)

The ALJ discussed plaintiff's mental impairments. He found plaintiff had met with psychiatric nurse Dolores Lesseig, but found no evidence that a collaborating psychiatrist was involved other than reviewing the nurse's report. The ALJ found that plaintiff has no restrictions in his daily living, mild difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, and pace. He found no episodes of decompensation or

---

[4]Prilosec is an over-the-counter medication that blocks acid production in the stomach, and is used to treat acid-related throat and stomach problems. Webmd.com/drugs. (Last visited February 26, 2007.)

[5]Tegretol is a medication used to control and prevent seizures. Webmd.com/drugs. (Last visited February 26, 2007.)

-4-

deterioration. The ALJ believed that the nurse's report indicated that she believed plaintiff was stable. (Tr. 21-22.)

The ALJ found plaintiff's allegations not wholly credible. His descriptions of his vertigo were described as vague by one nurse, and one nurse thought that, because he was able to describe his symptoms, his memory was intact. The ALJ did not find plaintiff's wife's description of his daily activities credible and was "not persuaded that this is the most the claimant can do." (Tr. 22-23.)

The ALJ found that plaintiff's past relevant work is that of assembly worker, brick hauler, stocker and cashier in retail store, pipe fitter, ditch digger, and a recyclables sorter. The ALJ found that plaintiff could not do this past work, but that his "exertional abilities are consistent with the Social Security definition of 'light work.'" He also noted that plaintiff had the nonexertional limitations of avoiding workplace hazards and excessive noise. (Tr. 23-24.)

In finding that plaintiff is not disabled, the ALJ applied Rule 202.20 of the Medical-Vocational Guideline grid regulations. (Tr. 25.) The ALJ did not consider any vocational expert testimony.

### Plaintiff's Grounds for Relief

Plaintiff argues that the decision of the ALJ is not supported by substantial evidence. Specifically, he argues that the ALJ erred by (1) not making any determination about plaintiff's nonexertional impairments; and (2) failing to acquire testimony from a vocational expert about those limitations.

### Discussion
#### a. Failure to Consider Nonexertional Impairments

Plaintiff argues that the ALJ did not consider or make findings as to his nonexertional impairments associated with his headaches, fatigue, and depression. Defendant argues that the decision is supported by substantial evidence, because the ALJ weighed the credibility of plaintiff and found him not to be wholly credible. Defendant argues that the infrequency of plaintiff's seizures indicates that he

exaggerates his condition, and that it is unclear whether his headaches are migraines or cluster headaches.

The RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a). When determining plaintiff's RFC, the ALJ must consider all of the relevant evidence, but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

The ALJ described plaintiff's RFC as follows:

> can lift and/or carry . . . twenty pounds occasionally and ten pounds frequently, stand and walk for six out of eight hours, and sit for six hours in an eight-hour workday; can never climb ladders, ropes, or scaffolds, and he must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. In addition, he must avoid excessive noise.

(Tr. 25.) The ALJ found that, with these limitations, plaintiff "is unable to perform the full range of light work. He is nevertheless capable of performing work that exists in significant numbers in the regional economy."[6] (Tr. 26.)

Plaintiff argues that this RFC does not contain any nonexertional limitations. Nonexertional limitations are any limitations besides strength, such as pain and memory, that reduce a person's ability to work. 20 C.F.R. § 404.1571(c)(1); Sanders v. Sullivan, 983 F.2d 822, 823 (8th Cir. 1992). "[I]f the claimant's [n]on-exertional impairments diminish his or her residual functional capacity to perform the full range of activities listed in the [Medical-Vocational] Guidelines, the [Commissioner] must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national

---

[6]Initially, the court notes that the ALJ's decision is without any explanation about why the ALJ feels plaintiff is unable to perform all types of light work, but is still able to perform some light work, enough that "exists in significant numbers in the regional economy." The ALJ's decision is vague and does not list the limitations that render plaintiff unable to perform some light work.

economy for a person with the claimant's characteristics." Id. "Resort to the [Medical-Vocational] Guidelines is permissible even though there is a nonexertional impairment, provided that the ALJ finds, and the record supports the finding, that the nonexertional impairment does not significantly diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir. 1995); McGeorge v. Barnhart, 321 F.3d 766, 768-69 (8th Cir. 2003).

The RFC attributed to plaintiff does not contain any nonexertional limitations stemming from his diagnosed depression. The ALJ discussed plaintiff's mental issues in his opinion, but nevertheless finds them not credible. There is substantial medical evidence supporting the finding of nonexertional impairments stemming from his depression. Lauer, 245 F.3d at 704 (RFC must be based on some medical evidence).

The ALJ based his decision that plaintiff's mental condition would improve in 12 months on the opinion of state agency consultant Mark Altomari, Ph.D., who never met with plaintiff. (Tr. 22, 284-97.) "The opinion of a [consultant] who examines a claimant once or not at all does not generally constitute substantial evidence." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). After Altomari's September 4, 2003 opinion, plaintiff continued to suffer from psychological problems until at least April 2004, with no treating medical care provider noting improvement. Altomari also opined that plaintiff had marked restrictions on his daily living, and marked difficulties maintaining persistence, pace, and concentration. Further, Altomari found plaintiff entirely credible, and thought he was depressed. (Tr. 296.)

Plaintiff was diagnosed many times with depression, as early as February 12, 2003. (Tr. 276-77.) He attempted suicide in June 2003, and was treated for mental health issues at that time. (Tr. 271.) He was assessed a GAF of 55[7] when he was discharged, which indicated

---

[7]A Global Assessment of Functioning Scale of 55 indicates "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Diagnostic and

-7-

moderate symptoms not addressed by the ALJ. On many occasions after his suicide attempt, the plaintiff complained of depression and spoke of suicidal thoughts. (Tr. 213, 223-26, 278-80, 312-14.) He was taking medication for his depression, and his dosage was increased. (Tr. 213, 280.) He routinely saw a psychiatric nurse, who, while not a treating *physician*, did treat plaintiff on many occasions. Her opinions are other evidence to be considered on the record as a whole. Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003). He was diagnosed with a "psychiatric disorder" as late as April 2004. (Tr. 353.) He was encouraged to apply for social security benefits, and, on more than one occasion, a physician noted he could not work, or stated that plaintiff hoped he could somehow become self-employed. (Tr. 105, 257-58.)

Further, there is no substantial evidence to support the ALJ's decision that plaintiff's subjective complaints are not wholly credible. "The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of any pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Id.

The ALJ failed to consider relevant facts in assessing plaintiff's credibility. Plaintiff reported to physicians repeatedly that he slept several hours a day. (Tr. 213, 314.) His wife corroborated this, and no doctor ever expressed in his notes that he believed plaintiff was

---

Statistical Manual of Mental Disorders 34 (Fourth ed. 2000).

lying about his condition.  He attended therapy.  He attempted suicide, and had suicidal thoughts thereafter.  He complained of dizziness or vertigo on many occasions.  His condition led him to "act out" in public, which his wife corroborated.  (Tr. 313-14.)  His doctors' diagnoses are consistent with his complaints.  He did not participate in many daily activities, and his driver's license was taken away due to his condition.  He complained of headaches and was treated for them.

The undersigned concludes that the record is unequivocal that plaintiff suffers from nonexertional impairments that significantly affect his ability to work.

### b.  Use of Vocational Expert

The ALJ did not acquire testimony from a vocational expert, but instead used the Medical Vocational Guidelines to determine that there was some work plaintiff could do.

Because there is substantial evidence that plaintiff's depression and head pain cause him nonexertional limitations, the ALJ should have decided how these nonexertional impairments limit plaintiff's ability to work.  Resorting to the Medical Vocational Guidelines is permissible only when a nonexertional impairment does not significantly diminish the plaintiff's RFC to perform the full range of activities listed in the Guidelines.  <u>Harris</u>, 45 F.3d at 1194.  Therefore, consulting the Guidelines, and not using a vocational expert, would only be proper after the ALJ found that plaintiff's nonexertional impairments did not significantly limit his RFC.

As discussed above, there is substantial evidence of nonexertional impairments.  Therefore, this case should be remanded for consideration of plaintiff's nonexertional limitations and consideration of the testimony of a vocational expert.  Further, because the State Agency evaluator predicted that plaintiff's condition would improve, the ALJ should have plaintiff reevaluated by a mental health consultant to determine his current condition.

**RECOMMENDATION**

For the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security be reversed and remanded under Sentence 4 of 42 U.S.C.§ 405(g). The Commissioner should conduct further proceedings on the issues set forth above.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.


/S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**


Signed on February 27, 2007.